IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD LEON LOUGHMILLER,

Petitioner,

vs.

KATHLINE DICKINSON, Warden,

Respondent.

Case No: 2:09-cv-02094-JKS

MEMORANDUM DECISION

Richard Leon Loughmiller, a state prisoner proceeding *pro se*, has filed a Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254.  Loughmiller is currently in the custody of the

California Department of Corrections and Rehabilitation, incarcerated at the California Medical

Facility, in Vacaville, California.  Respondent has filed an answer, and Loughmiller has filed a

traverse.

STATEMENT OF THE FACTS

The following statement of the facts is taken verbatim from the decision of the California

Court of Appeal, First District:[1]

> Patricia Oberman testified at trial that on the morning of April 15, 2005,
> [Loughmiller] came to her home. [Loughmiller] and Oberman had dated in the past, but
> were not getting along well at that time. [Loughmiller] banged on the front door of

---

[1] *People v. Loughmiller*, 2008 WL 2738590, *1 (Cal. App. 1 Dist., 2008).

Oberman's house and yelled that she should open the door. Oberman told [Loughmiller] to go away. [Loughmiller] refused and Oberman then heard a loud crash and saw the front door falling off its hinges into her entry hallway. [Loughmiller] entered the house and walked into the living room. He was carrying a backpack, which he set down in the living room.

Arthur Weber, who had gone on several dates with Oberman, testified that on that same morning he visited Oberman and had coffee with her. After the visit, Weber left Oberman's home through the back door, and as he was leaving, he heard a loud crash. He went around to the front of the house and saw that the door had fallen in. He walked up the front steps and looked into the house, where he saw [Loughmiller] standing in the living room. Weber entered the house with some difficulty because of the position of the door, and stood in the entryway, five or six feet from [Loughmiller].

Weber further testified that [Loughmiller] then pulled a gun out of his backpack. Weber began backing up, out of the doorway and down the front steps. [Loughmiller] said to Weber something to the effect of "I knew you were here. I'm gonna get you. I'm gonna kill you." He walked toward Weber, pointing the gun at him. When [Loughmiller] was six or seven feet from Weber, he fired the gun. Weber testified that then "[e]verything turned white," and he slipped on the front steps. When Weber got up, he did not see [Loughmiller] or Oberman. He noticed blood on his right hand, which he later discovered was coming from what looked like a burn or small scratch on his ring finger. He did not know if the injury was caused by a bullet or by his fall on the front steps.

Police arrested [Loughmiller] later that day, and found a loaded gun in [Loughmiller's] van and a knife in his pocket. Vallejo Police Officer Pedretti testified that after [Loughmiller's] arrest, he waived his Miranda rights (*Miranda v. Arizona* (1966) 384 U.S. 436) and agreed to speak with Pedretti. [Loughmiller] told Pedretti that Weber pushed him through the front door of Oberman's house and tried to hit him with a potted plant, and [Loughmiller] fired a "warning shot" to get Weber to leave him alone. Weber testified that he did not attack [Loughmiller] or try to hit him with a potted plant. Oberman testified that she did not see Weber attack [Loughmiller], and although she kept a potted tree in her dining room, it was not disturbed during the incident.

<u>PROCEDURAL HISTORY</u>

Following a jury trial, Loughmiller was convicted of attempted murder (Cal. Pen. Code §§ 187(a), 664); first degree burglary (Cal. Pen. Code § 459); and discharging a firearm with gross negligence (Cal. Pen. Code § 246.3).  The jury also found true enhancements for the personal use and intentional discharge of a deadly or dangerous weapon (Cal. Pen. Code §§ 1203.06(a)(1), 12022.5(a)(1), & 12022.53(c)), and for being personally armed with a deadly or

dangerous weapon (Cal. Pen. Code, § 12022(a)(1)).  The trial court sentenced Loughmiller to 27 years in prison.

Loughmiller timely appealed his conviction and on July 15, 2008, the California Court of Appeal affirmed his conviction in a reasoned, unreported decision.  Loughmiller's subsequent petition for review was denied by the California Supreme Court.

Petitioner timely filed his Petition in this Court on July 29, 2009, raising three grounds for relief: 1) the trial court improperly ignored Loughmiller's petition to substitute counsel; 2) ineffective assistance of trial counsel, and; 3) Loughmiller may not have been competent to stand trial.

Respondent has filed her Answer, but has not responded to Loughmiller's third claim that he was incompetent to stand trial.  Respondent concedes that Loughmiller's claims are properly exhausted,[2] and does not assert that any of Loughmiller's claims are procedurally barred.

STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]  The Supreme Court has explained that "clearly established Federal law" in

_____

[2] This Court disagrees that Loughmiller's third claims is properly exhausted.  This Court will address this issue in its discussion of Loughmiller's third ground.

[3] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[7]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[4] *Williams*, 529 U.S. at 412.

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

4

impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12]  State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[13]  Under California's unique habeas procedure, a defendant who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[14]  This is considered as the functional equivalent of the appeal process.[15]  Under AEDPA, the state court's findings of

---

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] *Ylst*, 501 U.S. at 802-03.

[14] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002).

[15] *Id.* at 222.

fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16]  This presumption applies to state trial courts and appellate courts alike.[17]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must presume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[18]  In so doing, because it is not clear that it did not so do, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds, giving the presumed decision the same deference as a reasoned decision.[19]  The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

---

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[19] *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

<u>DISCUSSION</u>

As noted above, Loughmiller raises three grounds for relief.  This Court will discuss the grounds in the order presented.

<u>I.  Trial Court Failed to Conduct a Marsden Hearing</u>

Loughmiller claims that the trial court violated the Sixth Amendment when it failed to hold a *Marsden* hearing in response to his written motion.[22]  Regardless of whether a state court failed to conduct a hearing under *Marsden* or denied the motion after a full hearing, the proper inquiry in federal habeas review is whether Loughmiller's Sixth Amendment right to counsel was violated.[23]  That is, this Court must consider whether the trial court's denial of or failure to rule on the motion "actually violated [Loughmiller's] constitutional rights in that the conflict between [Loughmiller] and his attorney had become so great that it resulted in a total lack of

---

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Cf. Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)."  *Richter*, 562 U.S. ___, 131 S. Ct. at 784-85.

[22] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case that held that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request, *i.e.*, evidence and argument to establish that he is receiving ineffective assistance of counsel.

[23] *Cf. Shell v. Witeck*, 218 F.3d 1017, 1024-25 (9th Cir.2000) (en banc) (overruling earlier circuit precedent that had stated that habeas court's inquiry was whether the state court's denial of the motion was an abuse of discretion).

communication or other significant impediment that resulted in turn in an attorney-client

relationship that fell short of that required by the Sixth Amendment."[24]

    After a thorough analysis, the California Court of Appeal rejected Loughmiller's claim,

finding that he had abandoned his *Marsden* motion on the basis of his post-motion conduct:[25]

> [Loughmiller] contends the court erred in not conducting a Marsden hearing
> (*People v. Marsden* (1970) 2 Cal.3d 118) in response to his written motion for
> substitution of counsel and his letters to the court expressing dissatisfaction with his
> counsel's performance.
>     The clerk's transcript contains a "Notice of Motion and Motion for Substitution of
> Counsel" signed by [Loughmiller] and dated July 19, 2005. The motion stated that "on
> the 21 day of July, 2005, at the hour of 08:30 in Department C of the above-entitled
> court, or as soon therefore as this motion can be heard, defendant and/or counsel will
> move the court for an order to dismiss and/or relieve counsel due to inadequate
> representation." In the attached declaration, [Loughmiller] declared that "[d]ue to the
> fundamental breakdown in the relationship between declarant and counsel which reaches
> well beyond disagreements in trial tactics, declarant cannot and will not receive adequate
> representation by counsel of record in this case," and stated that [Loughmiller] would
> provide evidence to support this claim at the hearing on the motion. The declaration
> listed a number of [Loughmiller's] concerns with his counsel, including that counsel had
> failed to confer or communicate with him, had failed to pursue evidence favorable to the
> defense, and had failed to perform investigations necessary to the defense. The attached
> proof of service, also dated July 19, 2005, stated that "on this date," [Loughmiller]
> caused a true and correct copy of his "Marsden Motion to be served on the parties to this
> action by [¶] delivering same in person to the address as follows and placing into the
> control of the below listed party or their representative: [¶] My Judge of the Court [¶]
> Judge Scott Daniels [¶] 321 Toulume St [¶] Vallejo CA 94590." The motion for
> substitution of counsel is not file stamped. **FN2**
>
> **FN2.** The record contains no indication of who placed the document in the file or when
> this occurred.
>
>     The clerk's transcript also contains numerous, multi-page, handwritten letters
> signed by [Loughmiller] and addressed to Judge Daniels, the judge who presided over
> most, but not all, of [Loughmiller's] court proceedings. As relevant here, in a four-page

---

[24] *Id.* at 1026.

[25] The Court of Appeal seemed to tacitly find that Loughmiller's letter to the court was
sufficient to merit a *Marsden* hearing.

letter to Judge Daniels dated July 21, 2005, [Loughmiller] expressed dissatisfaction with his counsel's performance, and stated, on page three, "I have filed [a] complaint to the Bar Assn. and am sending you [a] Marsden Motion also." In a two-page letter dated August 11, [Loughmiller] stated that he had filed a complaint with the State Bar Association against his attorney, "based partly on his disregard of my explicit instructions for my trial to commence within the 60 day period." [Loughmiller's] July 21 and August 11 letters to the court do not bear file stamps.

As the People concede, the clerk's and reporter's transcripts contain no record of a hearing on  [Loughmiller's] motion for substitution of counsel, either on July 21, 2005, or at later proceedings. On July 21, the court held a proceeding for trial setting, and Judge James F. Moelk presided. The court did not refer to [Loughmiller's] motion for substitution of counsel, and did not offer [Loughmiller] an opportunity to explain his concerns with his counsel's performance. Although [Loughmiller's] written motion for substitution had requested a hearing on this date, [Loughmiller] did not orally raise his complaints about counsel or talk about his motion for substitution. Further, [Loughmiller] did not mention his motion for substitution or express dissatisfaction with his counsel's performance at any later proceeding.

" 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' [Citations.]" (_People v. Fierro_ (1991) 1 Cal.4th 173, 204; see Marsden, supra, 2 Cal.3d at pp. 123-124.) However, the trial court has "no obligation to initiate the Marsden inquiry sua sponte. A trial court's duty to conduct the inquiry arises 'only when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' [Citation.]" (_People v. Leonard_ (2000) 78 Cal.App.4th 776, 787.) "Although the defendant need not file 'a proper and formal legal motion' he must express 'at least some clear indication . . . that he wants a substitution of attorney.' " (_People v. Lee_ (2002) 95 Cal.App.4th 772, 780, fn. omitted.)

A defendant who makes a timely Marsden motion may, by his postmotion conduct, abandon his request for a Marsden hearing. (_People v. Vera_ (2004) 122 Cal.App.4th 970, 981-982.) In Vera, the defendant orally made a Marsden motion and began listing some of the reasons he believed his counsel was ineffective. The trial court heard several of the defendant's concerns, but then interrupted the defendant to accommodate its busy calendar. The defendant stated that he was not finished, and the trial court explained that the Marsden motion was denied without prejudice, and could be renewed at a later time. (Vera, at pp. 975-976.) However, the defendant failed to renew his Marsden motion at a later hearing. (Vera, at pp. 981-982.) On appeal, the court held that the defendant had abandoned his Marsden motion by failing to further present his complaints at the later hearing. (Vera, at p. 982.) The court reasoned, "In this case, the

trial court offered [the] defendant the opportunity for a further hearing. [The d]efendant's failure to take advantage of this offer can only be interpreted as an abandonment of his unstated complaints. [Citation.] While we are aware of no precedent finding abandonment of a Marsden motion, it is established that a defendant's conduct may amount to abandonment of a request to represent himself under *Faretta v. California* (1975) 422 U.S. 806. [Citations.] If a defendant can abandon his request to substitute himself for counsel, a defendant can abandon his request to substitute another counsel. We conclude that [the] defendant abandoned his unstated complaints about counsel by not accepting the court's invitation to present them at a later hearing." (Vera, at pp. 981-982.)

The Vera court relied on *People v. Kenner* (1990) 223 Cal.App.3d 56 and *People v. Skaggs* (1996) 44 Cal.App.4th 1, which held that a defendant's postmotion conduct may establish abandonment of his Faretta motion for self-representation. In Kenner, the defendant made a Faretta motion, and the court set the matter for hearing. Because the defendant was in custody on an unrelated matter, he repeatedly missed the hearing, which was continued three times. The defendant then appeared with retained counsel, who asked that the motion be reserved until the next pretrial hearing. Thereafter, the court failed to hold a hearing on the Faretta motion, and the defendant did not mention his motion again until he challenged his conviction on appeal. (Kenner, at pp. 58-60.) The court concluded that the defendant had abandoned the motion, noting that he never asked for a ruling despite ample opportunity to do so, and his conduct indicated that he acquiesced in being represented by counsel. (Id. at p. 62.) The court explained, "One interpretation of this record is that [the defendant] realized that the trial court forgot the Faretta motion in the confusion resulting from his custody situation, and slyly saved his Faretta ace to play triumphantly on appeal. The record does not clearly establish any such cunning strategy; however, if it did, the gamesmanship should not be rewarded. The record also strongly suggests that [the defendant] made the Faretta motion to buy time, got that time, and abandoned the motion. But our view of these facts is simply that [the defendant] had second thoughts about the wisdom of representing himself and abandoned the idea. [¶] Defendants who sincerely seek to represent themselves have a responsibility to speak up. The world of the trial court is busy and hectic, and it is to be expected that occasionally a court may omit to rule on a motion. When that happens, as here, we believe it is reasonable to require the defendant who wants to take on the task of self-representation to remind the court of the pending motion. Therefore, we hold that on this record, where [the defendant] had both time and opportunity to follow up on his request for a hearing on his Faretta motion, and failed to do so, he must be deemed to have abandoned or withdrawn that motion." (Kenner, at p. 62, fn. omitted.)

In Skaggs, the defendant asserted, " 'I'd like to go pro per if I could,' " during a Marsden hearing. (*People v. Skaggs*, supra, 44 Cal.App.4th at p. 5.) The trial court denied the Marsden motion, but did not address the issue of self-representation. (Skaggs, at p. 5.) The court held that the defendant's comment was not an unequivocal request for self-representation. (Id. at pp. 5-7.) It further concluded that even if the comment constituted a Faretta motion, the defendant abandoned the motion: "[The defendant's] failure to request such a ruling or to raise the issue again and his silent acceptance of

10

defense counsel's assistance for the remainder of the proceedings in the trial court constitute a waiver or abandonment of any right to self-representation [the defendant] arguably asserted." (Skaggs, at p. 8.)

[Loughmiller's] July 19, 2005 motion expressly stated  [Loughmiller's] dissatisfaction with his counsel's performance and his desire for substitution of counsel. However, the court failed to rule on his Marsden motion, and [Loughmiller] never raised the issue again until he filed his opening brief on appeal. At the hearing on July 21, the court did not mention  [Loughmiller's] motion, and [Loughmiller] did not remind the court of the pending motion or express any dissatisfaction with defense counsel's performance. [Loughmiller] also failed to mention his motion at the pretrial hearings on August 25 and September 6, 2005; at his three-day trial on September 13, 14 and 15, 2005; and at the posttrial hearings on June 22 and August 17, 2006. Instead, [Loughmiller] silently accepted defense counsel's assistance throughout the remainder of the proceedings. Because [Loughmiller] had ample time and opportunity to follow up on his request for a hearing on his Marsden motion but failed to do so, he is deemed to have abandoned the motion. **FN3**

**FN3.** [Loughmiller's] handwritten letters to the court do not change our conclusion. [Loughmiller's] letter to the court dated July 21, 2005, expressed  [Loughmiller's] dissatisfaction with counsel's performance and stated that [Loughmiller] was "sending [the court a] Marsden motion also." Thus, it does not appear that [Loughmiller] intended this letter to constitute a separate Marsden motion.  [Loughmiller's] letter dated August 11 does not request substitution of counsel, but merely states that [Loughmiller] filed a complaint with the State Bar Association regarding his attorney's performance. This letter does not constitute a Marsden motion, as it does not contain a clear indication that [Loughmiller] wanted a substitution of attorney. (*People v. Lee*, supra, 95 Cal.App.4th at p. 780.) Furthermore, even if  [Loughmiller's] letters did constitute separate Marsden motions, he did not follow up on them when the court failed to rule upon them at subsequent court proceedings, and therefore they are likewise deemed abandoned.

*People v. Lloyd* (1992) 4 Cal.App.4th 724, relied on by  [Loughmiller], does not require a different result. In Lloyd, the defendant wrote a letter to the court requesting substitution of counsel, and the court failed to conduct a pretrial hearing in response to this letter. (Id. at pp. 729-730.) About a month later, however, on the second day of trial, the court provided the defendant with an opportunity to voice any complaints about his counsel, and the defendant responded only with complaints about how evidence was being presented. (Id. at pp. 731-732.) The appellate court held that the trial court's initial failure to conduct a Marsden hearing in response to the defendant's written motion was error. (Lloyd, at pp. 731.) The court rejected the Attorney General's argument that the defendant was not entitled to a hearing because the judge "may have been 'personally' unaware of the letter," noting that the letter had a superior court file stamp and "the fact that a particular judge may not have been aware of the letter does not excuse the court from providing Lloyd with his constitutionally mandated hearings." (Ibid.) However, the court concluded that "the effect of the administrative error was resolved when Lloyd

failed to renew his earlier motion at the hearing conducted on the second day of trial" (Lloyd, at p. 731); that is, "the court's error in failing to consider Lloyd's first Marsden motion became harmless when Lloyd failed to reassert the reasons underlying the motion at the later hearing" (Lloyd, at p. 732). Though Lloyd utilized a harmless error analysis, the result is perfectly consistent with Vera's conclusion that a defendant's postmotion conduct may constitute an abandonment of his request for Marsden relief. [Loughmiller] abandoned his Marsden motion by failing to follow up on the motion and instead silently accepting counsel's assistance throughout the remainder of the proceedings.[26]

Because the California Court of Appeal rejected Loughmiller's claim, this Court can provide relief only if this decision constituted an unreasonable application of clearly established federal law, or involved an unreasonable determination of the facts.[27]  The California courts have ruled that while a trial court has a duty to address a properly presented *Marsden* motion, a defendant may abandon a motion by not reminding the trial court of the motion and requesting a ruling.[28]  The principle that failure to renew a motion constitutes a waiver or an abandonment has been applied in a wide variety of contexts, including those which implicate a defendants's constitutional rights.[29]  This rule is based, in part, on the reality that "[t]he world of the trial court is busy and hectic, and it is . . . expected that occasionally a court may omit to rule on a motion."[30]  The California Court of Appeal held that Loughmiller had both time and opportunity

---

[26] *Loughmiller*, 2008 WL 2738590 at *2-*5.

[27] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[28] *People v. Vera*, 18 Cal.Rptr.3d 896, 904 (2004).

[29] *See People v. Kenner*, 222 Cal.Rptr.3d 551, 555 (1990) (failure to renew a pending motion for self-representation); *People v. Murtishaw*, 258 Cal.Rptr. 821 (1989) (failure to renew motion to exclude a victim from the courtroom).

[30] *Kenner*, 272 Cal.Rptr. at 555.

to follow up on his request for a hearing on his *Marsden* motion, and failed to do so, and, therefore was deemed to have abandoned or withdrawn that motion.

To the extent that Petitioner raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[31]  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the laws of the state.[32]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[33]  This principle applied to federal habeas review of state convictions long before AEDPA.[34]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state

---

[31] *Swarthout v. Cooke*, 562 U.S. ___, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[32] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[33] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[34] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

supreme court's interpretation of the law.[35]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[36]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[37]  This is especially true where the highest court in the state has denied review of the lower court's decision.[38]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[39]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[40]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[41]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of

---

[35] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[36] *Id.* at 76.

[37] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[38] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[39] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[40] *Cooke*, 562 U.S. at ___, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[41] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

constitutional dimension."[42]   In this case, Loughmiller essentially complains that the state courts

applied California's state law's concerning waiver in a manner that violated his Sixth

Amendment rights.   Thus, his claim is barred unless he can show an independent constitutional

violation.[43]

      In a habeas proceeding, this Court's inquiry concerning Loughmiller's *Marsden* motion

is whether the conflict between Loughmiller and his attorney that formed the basis for

Loughmiller's motion "[became] so great that it resulted in a total lack of communication or

other significant impediment that resulted in turn in an attorney-client relationship that fell short

of that required by the Sixth Amendment."[44]   "If the serious conflict did not rise to the level of a

constructive denial of counsel, however, [Loughmiller] would have to prove he was prejudiced

by the conflict."[45]   In his Petition, Loughmiller claims that there was a fundamental breakdown

in the attorney/client relationship–counsel failed to communicate with Loughmiller, had not

adequately investigated the case and had not prepared a defense.   In his letter dated July 21,

2005,[46] Loughmiller claims that his attorney insisted that he waive time and postpone the trial in

---

    [42] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982) (internal quotations omitted)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

    [43]  *Cf. Shell*, 218 F.3d at 1024-25 (overruling earlier circuit precedent that had stated that habeas court's inquiry was whether the state court's denial of the motion was an abuse of discretion).

    [44]  *Id.* at 1026.

    [45]  *Schell*, 218 F.3d at 1028 (citing *Strickland v. Washington*, 466 U.S. 668, 691-92 (1994)).

    [46]  Both Loughmiller and the Respondent note that Loughmiller filed a *Marsden* motion on July 19, 2005, in which Loughmiller stated his dissatisfaction with his counsel's performance and his desire for substitution of counsel.  However, this motion was not attached with the other

15

order to give counsel longer to prepare for trial.  Loughmiller also implies that his counsel strongly encouraged him to accept a plea agreement.

Even if these allegations were true, they do not constitute a constructive denial of counsel.  "[N]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."[47]  The Sixth Amendment does not guarantee a criminal defendant a meaningful relationship with his or her counsel, since no court can ensure that a defendant will develop a certain level of rapport with counsel.[48]  The fact that trial counsel needed more time to develop the best case possible for Loughmiller, or whether the two disagreed as to whether a plea agreement was the best disposition for Loughmiller's case did not render counsel's representation constitutionally inadequate.

Since Loughmiller has failed to show that the conflict with his counsel constituted a constructive denial of counsel, he must "prove he was prejudiced by the conflict."[49]  In order to demonstrate prejudice, Loughmiller must show that the conflict with his counsel was so serious as to deprive him of a fair trial, a trial whose result is reliable.[50]  The evidence against Loughmiller was significant: both Oberman and Weber testified that Loughmiller broke into the house and shot at Weber.  Oberman also testified that, following the shooting, Loughmiller asked

---

letters in Loughmiller's Petition.

[47] *Schell*, 218 F.3d at 1027.

[48] *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

[49] *Schell*, 218 F.3d at 1028 (citing *Strickland*, 466 U.S. at 691-92).

[50] *See id.*; *see also Strickland*, 466 U.S. at 687, 691-92 (defendant must show that error rendered the result unreliable).

her to be on his side and falsely tell people that the shooting was done in self-defense.[51]   In light

of the significant evidence of his guilt, Loughmiller has not managed to show how a different

attorney might have obtained a more favorable and reliable result.  He is not entitled to relief on

this ground.

## II.  Ineffective Assistance of Counsel

Loughmiller next argues that his counsel was ineffective for arguing against an

instruction on attempted voluntary manslaughter as a lesser included offense of attempted

murder.  Loughmiller also claims that counsel was ineffective for failing to present evidence that

Loughmiller was suffering from a rare form of cancer that induced his violent conduct.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Loughmiller must

show both that his counsel's performance was deficient and that the deficient performance

prejudiced his defense.[52]  A deficient performance is one in which counsel made errors so serious

that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[53]

Loughmiller must show that defense counsel's representation was not within the range of

competence demanded of attorneys in criminal cases, and that there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different.[54]  An analysis that

focuses "solely on mere outcome determination, without attention to whether the result of the

---

[51]  R.T., p. 61.

[52]  *Strickland*, 466 U.S. at 687.

[53]  *Id.*

[54]  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

proceeding was fundamentally unfair or unreliable, is defective."[55]  In reviewing ineffective

assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[56]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[57]

Loughmiller bears the burden of proving that counsel's trial strategy was deficient.

"[T]he defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'"[58]  "[He] bears the heavy burden of proving

that counsel's assistance was neither reasonable nor the result of sound trial strategy."[59]  "In

---

[55] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[56] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[57] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[58] *Strickland*, 466 U.S. at 689.

[59] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

determining whether the defendant received effective assistance of counsel, 'we will neither

second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but

rather, will defer to counsel's sound trial strategy."[60]  "Because advocacy is an art and not a

science, and because the adversary system requires deference to counsel's informed decisions,

strategic choices must be respected in these circumstances if they are based on professional

judgment."[61]

Loughmiller raised this claim on direct appeal, and it was rejected by the California

Court of Appeal:

> [Loughmiller] next contends that his trial counsel failed to provide effective
> assistance of counsel as guaranteed by the Sixth Amendment to the United States
> Constitution. [Loughmiller] argues that trial counsel's performance was deficient in two
> respects: (1) defense counsel objected to a jury instruction on the lesser included offense
> of attempted voluntary manslaughter, and (2) defense counsel failed to investigate and
> present evidence to the jury that [Loughmiller] suffered from carcinoid cancer.
>
> To demonstrate ineffective assistance of counsel, "a defendant must first show
> counsel's performance was deficient because the representation fell below an objective
> standard of reasonableness under prevailing professional norms. [Citation.] Second, he
> must show prejudice flowing from counsel's performance or lack thereof. Prejudice is
> shown when there is a reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different. A reasonable probability is
> a probability sufficient to undermine confidence in the outcome. [Citation.]" (*People v.
> Williams* (1997) 16 Cal.4th 153, 214-215.)
>
> <u>A. Attempted Voluntary Manslaughter Instruction</u>
>
> [Loughmiller] contends that his counsel rendered ineffective assistance by
> arguing against a jury instruction on the lesser included offense of attempted voluntary
> manslaughter. We disagree.
>
> At trial, outside of the presence of the jury, the court stated that "my research
> indicates that voluntary manslaughter is a lesser charge to attempted murder," and
> suggested instructing the jury on attempted voluntary manslaughter. Defense counsel
> objected and argued that attempted voluntary manslaughter is not a lesser included
> offense of attempted murder: "all crimes that are attempts are specific intent and you
> have to have the specific intent to do the act, and I don't think it makes sense to have the

---

[60] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[61] *Strickland*, 466 U.S. at 681.

specific intent to have a heat of passion." The court asked the district attorney for argument, and she stated she would submit to the court's ruling. The court then stated that it would remove the instruction on the request of defense counsel.

Defense counsel was incorrect in his legal argument that attempted voluntary manslaughter is not a lesser included offense of attempted murder. (*See People v. Montes* (2003) 112 Cal.App.4th 1543, 1545-1546 [attempted voluntary manslaughter is a lesser included offense of attempted murder and requires a specific intent to kill].) But this "error" is irrelevant to our analysis. Counsel utilized this argument in support of his strategy to avoid the trial court's proposed instruction. Only if we find that this strategic decision was not reasonable may we conclude that counsel's performance was inadequate.

It is well settled that " '[r]eviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) If "counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (Id. at p. 926.)

There is at least one conceivable reason for defense counsel's apparent tactical decision to object to the attempted voluntary manslaughter instruction. Counsel might have believed that if the jury were provided with both attempted murder and attempted voluntary manslaughter instructions, they would be more likely to compromise and find [Loughmiller] guilty of attempted voluntary manslaughter. However, if the jury were provided with only an attempted murder instruction, they would find [Loughmiller] not guilty. Thus, defense counsel could have reasonably concluded that his client would benefit if the trial court were persuaded not to give the attempted voluntary manslaughter instruction. We reject the claim of inadequate representation because we are not persuaded that the decision to argue against the proposed instruction had no conceivable rational basis.

### B. Evidence of Carcinoid Cancer

[Loughmiller] further contends that his counsel was ineffective in failing to investigate his medical history and present evidence to the jury at trial that [Loughmiller] suffered from carcinoid cancer. Again, we disagree.

At [Loughmiller's] sentencing hearing, on August 17, 2006, defense counsel presented testimony from a physician who had treated [Loughmiller] during his incarceration. The doctor testified that he met [Loughmiller] "less than a year ago one morning when he complained of abdominal pain," and that "[l]ater on, a pathology report came back and it was leadened with carcinoid tumor." The doctor testified that carcinoid cancer can cause behavioral changes, including violent behavior.

There is no evidence in the record indicating that [Loughmiller] had been diagnosed with carcinoid cancer at or before the time of his trial.  [Loughmiller's] trial took place on September 13, 14, and 15, 2005. In the only testimony related to [Loughmiller's] 's carcinoid cancer, [Loughmiller's]  physician stated that he met [Loughmiller] "less than a year" before the sentencing hearing on August 17, 2006, and

20

that a pathology report revealed [Loughmiller's] carcinoid cancer sometime "[l]ater on." From this evidence, there is no basis to conclude that defense counsel should have discovered [Loughmiller's] carcinoid cancer condition before September 13, 2005, when [Loughmiller's]  jury trial began. [Loughmiller] has not demonstrated that counsel's performance was deficient.

Because the California Court of Appeal rejected Loughmiller's claim, this Court can provide relief only if this decision constituted an unreasonable application of clearly established federal law, or involved an unreasonable determination of the facts.[62]

### A.  Attempted Voluntary Manslaughter Instruction

Loughmiller claims that his attorney's performance was deficient because counsel successfully argued against an instruction which would have allowed the jury to convict Loughmiller of the lesser-included offense of voluntary manslaughter instead of attempted murder.  Specifically, Loughmiller's counsel incorrectly argued that attempted voluntary manslaughter is not a lesser included offense of attempted murder, and the court should not instruct on attempted manslaughter.  The court did not give an attempted manslaughter instruction as a result of counsel's erroneous argument.  On direct appeal the Court of Appeal focused its analysis on whether counsel's overall strategy of avoiding a lesser-included-offense instruction was sound, his misapprehension of the law notwithstanding.  The court concluded that counsel could have wished to avoid having the jury "compromise" by finding Loughmiller guilty of attempted voluntary manslaughter and held that this trial strategy was not unreasonable.

---

[62] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

There is nothing in the record to support the conclusion that counsel's decision to argue against a lesser-included instruction on manslaughter was part of a strategy to avoid the court's proposed instruction.  Counsel explicitly stated:  "all crimes that are attempts are specific intent and you have to have the specific intent to do the act, and I don't think it makes sense to have the specific intent to have a heat of passion."[63]  At no time did counsel express concern that the jury might "compromise" and convict Loughmiller of manslaughter; it is clear from the record the Court of Appeal was speculating when it concluded that counsel made a strategic decision to avoid the proposed manslaughter instruction.  This conclusion is further supported by the language in the court's opinion—"There is at least one *conceivable* reason for defense counsel's apparent tactical decision to object to the attempted voluntary manslaughter instruction . . . ."[64]

"[C]ourts may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions," which is exactly what the Court of Appeal did in this case.[65]  The only evidence in the record is that Loughmiller's counsel argued against a lesser included manslaughter instruction based on a misapprehension of the law.  By doing so, Loughmiller's counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[66]  Accordingly, the Court of Appeal erred when it concluded that Loughmiller received effective assistance of counsel.

---

[63] *Loughmiller*, 2008 WL 2738590 at *6.

[64] *Id.* at *7 (Emphasis added).

[65] *Richter*, 562 U.S. at ___, 131 S.Ct. at 790 (2011).

[66] *Id.*

Having concluded that counsel's performance on this point was deficient, this Court must next consider whether Loughmiller actually suffered prejudice, i.e., whether it is reasonably probable that the jury would have convicted Loughmiller of attempted voluntary manslaughter had they been given the option.[67]   In *People v. Lasko*[68] the Supreme Court of California discussed the difference between murder and manslaughter:

> Murder is the unlawful killing of a human being with malice aforethought. (Pen.Code, § 187, subd. (a).) FN2 Malice may be either express or implied. It is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Ibid.) We have noted in the past that this definition of implied malice "has never proved of much assistance in defining the concept in concrete terms" (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1217, 264 Cal.Rptr. 841, 783 P.2d 200), and that juries instead should be instructed that malice is implied "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" (id. at p. 1215, 264 Cal.Rptr. 841, 783 P.2d 200). For convenience, we shall refer to this mental state as "conscious disregard for life."

> FN2. All further statutory references are to the Penal Code.

> *108 Manslaughter is "the unlawful killing of a human being without malice." (§ 192.) A defendant lacks malice and is guilty of voluntary manslaughter in "limited, explicitly defined circumstances: either when the defendant acts in a 'sudden quarrel or heat of passion' (§ 192, subd. (a)), or when the defendant kills in 'unreasonable self-defense' – the unreasonable but good faith belief in having to act in self-defense (*see In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Flannel* [ (1979) ] 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1])." ***446 (*People v. Barton* (1995) 12 Cal.4th 186, 199, 47 Cal.Rptr.2d 569, 906 P.2d 531.)[69]

---

[67] *Hill*, 474 U.S. at 57.

[68]  999 P.2d 666 (Cal. 2000).

[69]  *Lasko*, 999 P.2d at 670.

The form of voluntary manslaughter at issue in this case is whether Loughmiller attempted to kill Weber in unreasonable self-defense.[70]  Thus, this Court must consider whether it is reasonably probable that a jury would have found Loughmiller guilty of attempted manslaughter based on unreasonable self-defense, had it been given the option.  There is significant evidence that Loughmiller harbored both malice aforethought and the intent to kill when he fired the gun at Weber.[71]  Loughmiller showed up at Oberman's residence with a gun and kicked in the front door when she would not let him in.  When he saw Weber, Loughmiller said something to the effect of "I knew you were here. I'm gonna get you. I'm gonna kill you."[72] He then walked toward Weber and fired the gun at him.

On the other hand, Loughmiller's defense was rather weak.  He claimed that when he showed up at Oberman's house, Weber pushed him through the front door and tried to hit him with a potted plant.  He stated that he only fired a "warning shot" to get Weber to leave him alone.  Weber testified that he did not attack Loughmiller or try to hit him with a potted plant. Oberman testified that she did not see Weber attack Loughmiller, and although she kept a potted tree in her dining room, it was not disturbed during the incident.[73]  She also testified that

---

[70]  *People v. Blakeley*, 999 P.2d 675, 676-77 (Cal. 2000).  Loughmiller told police Weber pushed him through the front door of Oberman's house and tried to hit him with a potted plant, and that Loughmiller fired a "warning shot" to get Weber to leave him alone.  *Loughmiller*, 2008 WL 2738590 at *1.

[71]  The crimes of attempted murder and attempted manslaughter both require a specific intent to kill.  Attempted manslaughter requires an intent to kill which arises during the heat of passion or as the result of an unreasonable but good faith belief in having to act in self-defense. The crime of attempted murder requires the intent to kill with malice aforethought.  *See Lasko*, 999 P.2d at 670-671;  *People v. Montes*, 5 Cal. Rptr.3d 800, 804-05 (Cal. App. 2003).

[72]  *Loughmiller*, 2008 WL 2738590 *1.

[73]  *Id.*

24

Loughmiller then tried to convince Oberman to tell the authorities the shooting was in self-defense.[74]  When police apprehended Loughmiller, he was not cooperative, and they found the revolver that was used in the shooting when they searched his van.[75]

The only defense proffered by Loughmiller was that he never intended to kill Weber, but that he simply fired a "warning shot" to get Weber to stop attacking him.  The jury did not find Loughmiller's defense credible, since a conviction for attempted murder *necessarily* required a finding that Loughmiller intended to kill Weber.  Since the jury did not believe Loughmiller's claim that he did not intend to kill Weber, it is likely that they doubted other aspects of his story.  There was also significant evidence that Loughmiller had malice aforethought, as opposed to an unreasonable belief that he was acting in self-defense.  He showed up at Oberman's house carrying a gun and a knife, he kicked in the front door, declared his intention to kill Weber and fired the pistol at him.  Both Oberman and Weber testified consistently on these points.  Given the strong evidence that Loughmiller had the intent to kill with malice aforethought and the fact that the jury did not find his defense credible, it is not reasonably probable that a jury would have found Loughmiller guilty of attempted manslaughter based on unreasonable self-defense had it been given the option.  Loughmiller is not entitled to relief on this ground.

---

[74]  R.T. p. 61.

[75]  R.T. pp. 144-49, 160-66.

B.  Failure to Present Evidence of Cancer

Loughmiller claims that his trial counsel was ineffective for failing to present evidence that he was suffering from a rare form of cancer which may have caused violent behavior.  As the Court of Appeal noted, Loughmiller was diagnosed after his trial, and his counsel presented testimony from his doctor during sentencing.  Loughmiller has failed to show that the Court of Appeal's decision was contrary to federal law or involved an unreasonable determination of the facts.  In fact, in his Traverse, Loughmiller has included a letter from Brian Vikstrom, M.D., which indicates that he was diagnosed with cancer shortly after his trial ended.[76]  Loughmiller has not shown that he was diagnosed with cancer before or during the trial and that his attorney knew of this diagnosis.  Of course, counsel could not be expected to present evidence that did not exist at the time of trial.  Loughmiller is not entitled to relief on this ground.

III.  Competency to Stand Trial

In his third ground (which Loughmiller has mistakenly labeled Ground 2) Loughmiller claims that he "may have been" incompetent to stand trial.[77]  Respondent did not address this claim in her Response, but concedes that it was properly exhausted.  Loughmiller did not raise this claim on direct appeal and there is no evidence that he raised this issue in any state post-conviction proceedings.  Thus, it appears that Loughmiller has not properly exhausted this claim.

---

[76] Traverse, pp. 36-38.

[77] Petition, p. 8.

In order to exhaust a claim, a petitioner must "fairly present" to the state supreme court both the legal and factual basis for the claim.[78]  "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[79]

This Court notes that it may deny a *habeas* claim on the merits, the failure to exhaust notwithstanding,[80] when it is clear that the petition does not raise a colorable federal claim.[81]  Under California law, a defendant is presumed to be "mentally competent unless it is proved by a preponderance of the evidence that the defendant is not mentally competent."[82]  The Supreme Court has upheld the constitutionality of this provision.[83]  Competence to stand trial requires that a defendant have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."[84]  A defendant's constitutional right to due process is violated if his or her competency to stand trial was at issue and he or she did not receive an adequate competency

---

[78] *Baldwin v. Reese,* 541 U.S. 27, 29 (2004); *Robinson v. Schriro,* 595 F.3d F.3d 1086, 1101 (9th Cir. 2010).

[79] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir. 2008) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958)).

[80] 28 U.S.C. § 2254(b)(2).

[81] *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir. 2005).

[82] Cal. Pen. Code § 1369(f).

[83] *Medina v. California*, 505 U.S. 437, 452 (1992).

[84] *See Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

hearing.[85]  A trial judge must conduct a competency hearing whenever the evidence before the trial judge raises a "bona fide doubt" about the defendant's competence to stand trial.[86]  In making this determination, this court examines only the information that was before the trial court.[87]  "A bona fide doubt exists if there is substantial evidence of incompetence."[88]

There is no evidence that Loughmiller was unable to communicate with his attorney or understand the proceedings against him.  As evidence of his deteriorated mental state, Loughmiller points to his medical records, dating back to April 15, 2005.  A review of these records indicate that Loughmiller was stressed regarding his arrest and the fact he was facing trial for a charge of attempted murder[89]–indeed, Loughmiller's anxiety concerning the trial indicates that he was actually fully aware of the nature and consequences of the proceedings against him.  Mere anxiety or even depression concerning his trial are not sufficient to place the trial court on notice that Loughmiller was incapable of understanding the proceedings or conferring with his appointed counsel.[90]

---

[85] *Pate v. Robinson*, 383 U.S. 375, 385 (1986).

[86] *See id.*; *see also de Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (en banc) (same).

[87] *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir. 1997).

[88] *Id.* (internal quotation marks and citations omitted).

[89] Traverse, pp. 20, 24, 29.

[90] *Davis v. Woodford*, 384 F.3d 628, 646 (9th Cir. 2004) ("Davis may have been depressed, but his history, statements, and conduct did not approach . . . overwhelming indications of incompetence . . . ."); *see also Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir.2001) (holding that it was error not to conduct competency hearing where petitioner had suffered severe trauma to his brain as a result of a car accident and had a 3 x 3 x 4-inch piece of his brain removed, and had a long subsequent history of psychiatric hospitalization and bizarre behavior); *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000) (concluding that district court

Contrastingly, there is evidence that Loughmiller was perfectly aware of the proceedings and fully able to participate in his defense.  Loughmiller's letters to the trial court immediately preceding his trial and during his trial indicate that he fully comprehended the proceedings against him.  In these letters Loughmiller notifies the court of his dissatisfaction with his current counsel and requests a new attorney.  In fact, he even expressed concern as to whether his trial was being held in a timely manner.  Loughmiller's letters were clear and articulate, and in no way indicate that he was oblivious as to the proceedings against him or unable to communicate with his attorney.[91]  Loughmiller is not entitled to relief under this claim.

<u>CONCLUSION AND ORDER</u>

Loughmiller is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT THE COURT GRANTS A CERTIFICATE OF APPEALABILITY** on the sole issue of whether Loughmiller's attorney rendered ineffective assistance of counsel by arguing against a lesser included attempted-manslaughter

---

erred by not holding competency hearing where court-appointed psychiatrist had diagnosed the petitioner as having a severe delusional (paranoid) disorder, testing indicated that the petitioner had brain damage resulting from head trauma, and petitioner had disruptive outbursts in court).

[91]  For purposes of this analysis, the fact that Loughmiller may have had some disagreements with his attorney does not mean that he was incapable of communicating with counsel or assisting in his defense.

instruction.[92]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[93]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 2, 2011

/s/ James K. Singleton, Jr.

**JAMES K. SINGLETON, JR.**
United States District Judge

---

[92]  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("to obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El*, 537 U.S. at 327)).

[93]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.